# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

March 17, 2025

**By ECF**

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   United States v. Thomas Earl Little II, 24 Cr. 452 (AT)

Dear Judge Torres:

Last July, Thomas Earl Little II breached the Court's trust when he left the judicial district without the Court's permission and was arrested in Idaho as a passenger in a car that contained firearms. By the time of his April 7, 2025, sentencing, he will have spent more than eight months in jail – five of them at MDC Brooklyn – because of that breach. That is more than enough. During that time, he has endured incessant lockdowns, maggot-infested food, medical neglect, and the omnipresent threat of violence. While detained, he has also grieved the sudden death of his younger brother following a car accident on New Year's Day, and he has lamented his inability to be present for his mourning family.

Today, Mr. Little sits at the MDC longing for the physical therapy and medication he requires and thinking about his goals for the future, including his wish to help support his loved ones. He is deeply remorseful for his breach of the Court's trust and committed to making better decisions in the future. *See* Exhibit A, Letter of Thomas Earl Little II. He is ready to move forward. I respectfully urge the Court to give him that opportunity by imposing a sentence of time served and one year of supervised release.

I.   Mr. Little succeeded during his first year of supervision.

On May 18, 2022, Thomas Little was sentenced in the District of Arizona, by Judge Rosemary Marquez, to 21 months' imprisonment and three years' supervised release, following his guilty plea to Conspiracy to Transport Illegal Aliens. VOSR Petition at 2. On July 21, 2023, he was released to his mother's home in the Bronx and commenced supervision in the Southern District of New York. *Id.*

Mr. Little thrived during his first year of supervision.  In his first month, he completed an outpatient substance abuse and mental health treatment assessment, and the provider determined that he did not require substance abuse or mental health treatment.  *Id.*  When Mr. Little subsequently tested positive for marijuana (after three initial urinalyses which were negative for all illicit substances), he was honest about using it and agreed to stop.  *Id.*  His next test was negative for all illicit substances.  *Id.*

Mr. Little's efforts to obtain job training and employment were similarly impressive.  While detained at a BOP Residential Re-entry Center in Arizona, he trained for and obtained his commercial driver's license (CDL).  *Id.*  When, at the onset of his supervision, he was denied permission to use his CDL through work as a trucker, he pursued other opportunities.  *Id.*  He sought job search assistance at the Exodus re-entry program in Harlem and, within three months of his release, found work at a warehouse in Queens.  *Id.*  When he started working part-time as a delivery driver, his Probation Officer admonished him for beginning that work before receiving permission but allowed him to continue.  GX 402 at USAO_00000249.[1]  Mr. Little took that admonition to heart; a month later, he requested permission from his officer before starting another position as a full-time truck driver using his CDL.  *Id.* at USAO_00000251.  By December 2023, less than five months after his release, Mr. Little was working two jobs using the CDL he had worked so hard to obtain.  VOSR Petition at 2.  And when Mr. Little received motor vehicle summonses or and had an accident resulting in police contact, he promptly reported that contact to Probation every time.  *Id.*[2]

II.    Mr. Little's arrest and punishing period of confinement.

On July 28, 2024—after one year of excellent performance on supervised release—Mr. Little breached the Court's trust by leaving the judicial district without permission and by riding in a car that contained firearms.  The Court is familiar with the facts of Mr. Little's violations, having presided over a two-day hearing on the specifications.  ECF No. 47.  Following a traffic stop by Idaho State Police, Mr. Little—a passenger in someone else's car—was arrested and charged with Idaho state offenses, unlawful possession of a firearm by a felon and misdemeanor possession of marijuana.  VOSR Petition at 4.

At Mr. Little's initial presentment in Jefferson County, Idaho, the Court set bail at $40,000.  *Id.*  But Mr. Little never attempted to secure his release on that bail, because a federal detainer in this supervised release matter was imposed within a matter of days.  On October 17, 2024, the Chief Deputy Prosecuting

---

[1] Mentions of GX and DX in this submission refer to the parties' VOSR hearing exhibits.

[2] Mr. Little also paid his $100 special assessment.

Honorable Analisa Torres                                                            Page 3
Thomas Earl Little's Sentencing Submission                                 March 17, 2025

Attorney for Jefferson County, Idaho, moved to dismiss the case against Mr. Little "in the interest of justice."  DX F.  That motion was granted, and the case was dismissed on October 18, 2024.  DX E.  The U.S. Attorney's Office for the District of Idaho never charged or indicted Mr. Little for any federal offense, including a violation of 18 U.S.C. § 922(g)(1), possession of a firearm following a felony conviction.  After his state charges were dismissed, Mr. Little was transferred to the Southern District of New York to address this VOSR matter.

Following a journey in the custody of the United States Marshals Service, Mr. Little arrived at the Metropolitan Detention Center (MDC) – Brooklyn on November 5, 2024.  By the date of Mr. Little's sentencing, he will have been jailed for eight months and ten days, including five months at the MDC.  This Court is aware of the problems that plague that institution, including violence, constant lockdowns, and substandard medical care.  *See, e.g.*, *United States v. Chavez*, 710 F. Supp. 3d 227, 228-30 (S.D.N.Y. 2024) (Furman, J.) (describing the conditions at MDC as an "ongoing tragedy," and noting the near-perpetual lockdowns, widespread contraband, and a rash of inmate suicides during the last three years); *United States v. Tontisabo*, 21 Cr. 701 (LAK) (Jan. 3, 2024) ECF No. 77 (noting that a sentence of one year at the MDC "although it's very hard to quantify, is ever so much worse than it would have been five years ago"); *United States v. Colucci*, -- F. Supp. 3d --, 2024 WL 3643857 (GRB) (E.D.N.Y. Aug. 5, 2024) (considering at sentencing the dangerous, barbaric conditions that have existed for some time" at MDC Brooklyn).  Conditions at MDC have become so deplorable that, as Judge Furman has observed, "it is routine for judges in both this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC." *Chavez*, 710 F. Supp. 3d at 229.  Last Month, prosecutors in the Eastern District charged 25 people, including MDC prisoners and a former correctional officer, with crimes related to violate assaults and contraband smuggled into the facility.[3]  Mr. Little has spent much of his time there on lockdown due to violence that has nothing to do with him but that threatens his safety daily.

More than the violence, the lockdowns, or the maggot-infested rice, for Mr. Little, it is the MDC's neglectful medical care that has been the source of the most anguish.  He arrived at MDC in early November 2024 reporting unbearable pain, the result of an injury he sustained at age 9 when his foot was crushed in a trash compactor, necessitating 11 surgeries and causing lifelong discomfort.  *See* Exhibit B, Letter of Josephine De Jesus (describing Mr. Little's injury, surgeries, and recovery).  Upon arrival, he requested physical therapy and medication sufficient to

---

[3] U.S. Attorney's Office for the Eastern District of New York, Press Release: *25 Metropolitan Detention Center Inmates, Their Associates and a Former Correctional Officer – Charged in a Dozen Criminal Cases at the Federal Jail in Brooklyn* (Mar. 6, 2025), https://www.justice.gov/usao-edny/pr/25-metropolitan-detention-center-inmates-their-associates-and-former-correctional.

address his debilitating pain, both of which he had been receiving before his incarceration.  Months later, his needs still have not been met.  He receives Gabapentin, an anti-convulsant drug used to treat nerve issues, but it has not adequately addressed his pain, and he has had no physical therapy.

More than two months ago, on January 7, 2025, MDC Legal informed defense counsel that Mr. Little's request for physical therapy had been approved and was pending scheduling, along with an appointment to see a pain management specialist.  As of today, he still has received no physical therapy.  On February 11, 2025, four months after his arrival, Mr. Little was taken to Kingsbrook Jewish Medical Center to see a pain management specialist and was given a date for a follow-up appointment on March 11, 2025.  Before then, defense counsel wrote MDC Legal expressing that Mr. Little's pain had become intolerable and asking that he be seen sooner.  But when March 11 came around, Mr. Little was neither seen by MDC medical nor transported to Kingsbrook for his follow-up appointment.

Mr. Little is desperate for care.  He writes, "The medical neglect I face here has caused my condition to get worse. … I feel intense pain all the time."  Exhibit A. His mother, Josephine De Jesus, explains that his condition has been "rapidly declining" at the MDC and that he describes experiencing pain so intense that he contemplates requesting for his foot to be amputated.  Ex. B at 1.

The difficulty of Mr. Little's pre-hearing detention has been compounded by an unexpected tragedy: the sudden death of his younger brother last January.  Mr. Little was deeply grateful for the Court's decision to allow him temporary bail to attend his brother's viewing and funeral.  But for the most part, he has weathered this loss in isolation from his family, locked down at the MDC.  Having requested but not received therapy or psychological support, he has been left to process his grief alone.  That has been a learning experience.  He writes, "My brother's death earlier this year made me understand that life is short.  I got to just do right and follow the law and the rules to stay on track.  Losing my brother made me real depressed but it also motivated me a lot.  I wish I was with my mom and around the rest of the family I got now before they go too."  Ex. A at 1.

III.   The Court should sentence Mr. Little to time served and one year of supervised release.

The aims of sentencing following a violation of supervised release are to sanction the defendant's "breach of trust" and promote his rehabilitation.  For Mr. Little, the appropriate sentence on these violations is time served and one year of supervised release.

Sentencing following a violation of supervised release is governed by 18 U.S.C. § 3583.  *United States v. Brooks*, 889 F.3d 95, 99 (2d Cir. 2018).  Section 3583, in turn, requires district courts imposing sentence on a violation to consider some but not all of the factors set forth in 18 U.S.C. § 3553(a):

> the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to "protect the public from further crimes of the defendant" and "provide the defendant with needed ... training, medical care, or other correctional treatment," 18 U.S.C. § 3553(a)(2)(C)-(D); "the applicable guidelines or policy statements issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(4)(B); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

*Id.*

Title 18 U.S.C. § 3583(e) specifically omits § 3553(a)(2)(A) from the factors to be considered in revoking a term of supervised release.  *Id.* (quoting *United States v. Burden*, 860 F.3d 45, 56 (2d Cir. 2017)).  Court are not to consider § 3553(a)(2)(A), which goes to "the seriousness of the defendant's offense" because supervised release "is not, fundamentally, part of the punishment." *Id.* (internal quotation marks and citations omitted).  Its aims are rehabilitative.  *Id.* (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)).  Accordingly:

> The consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's "breach of trust"—his "failure to follow the court-imposed conditions" that followed his initial conviction—not "for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct."

*United States v. Haymond*, 588 U.S. 634, 658 (2019) (Breyer, J., concurring) (quoting United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2018)).

For Mr. Little, a sentence of time served will promote the statutory goals of sentencing for a violation of supervised release.  The eight months he has spent in custody have been punishing; they are the equivalent of a far more significant sentence in better-run facility.  And while his violations were serious, they were a departure from his impressive track record on supervised release for an entire year before his arrest.  In January, when he returned to the MDC following his brother's

funeral, he demonstrated that he is once again worthy of the Court's trust. Perhaps most importantly, his need for medical care militates in favor of his release as soon as possible, so that he can receive physical therapy and pain management in the community. Mr. Little is deeply remorseful for his breach of the Court's trust and for the poor judgment that landed him back in jail. But he has paid for it, and he has demonstrated that he deserves another opportunity to prove himself.

IV.    Conclusion

For the foregoing reasons, I respectfully request that the Court sentence Mr. Little to time served and one year of supervised release.

Respectfully submitted,

/s/ Ariel Werner
Ariel Werner
Assistant Federal Defender
212.417.8770

cc:    counsel of record

# EXHIBIT A

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York

Dear Judge Torres,

My name is Thomas Little and I'm writing to express my sincere remorse for my actions.

My time at MDC has made me think a lot about everything that I've been losing while I've been here. I put myself in a position where I couldn't be there for my family when they needed me the most and could have my freedom taken away from me. I need to stop putting myself in these positions and I'm realizing that this ain't the place I want to be in. If I spend any more time in here I'll lose my CDL, one of my biggest accomplishments, and I'll lose the job security that it gave me. If is stay here I won't have a job and my main source of income will be gone.

Being in here has affected my medical conditions severely. I have degenerative bones in my foot and severe arthritis, and I should be going to physical therapy weekly and taking the right medication for the pain. I haven't had any of it at all. It's impossible to get proper medical attention here and we always on lockdown. The medical neglect I face here has caused my condition to get worse. I'm always in pain because I'm given medication that's different from what I was prescribed when I was out. I was prescribed oxycontin to handle the severe pain from the bone-on-bone friction on my foot, and they're giving me gabapentin which is way less stronger. I feel intense pain all the time. It's even been difficult to get my medical shoes in here, and I still haven't gotten after months of trying. With my brother passing away recently, it's been even harder to reach out to my family because we always on lockdown. It's hard to get my family to bring my medical footwear because we don't get social visits, and it's hard to get them myself because we're locked down and I can't even get the approval. I feel this pain from my nerve and muscle damage 24/7, all the time, no matter what.

Despite all the hardships I'm facing here, I have been trying to stay positive and productive. When I first got here I was feeling pessimistic, and I still do at times but knowing that I can eventually get out has made me think more positive. I know that this doesn't have to be the end result of my life, or the place I'll end up coming back to. I was working steady jobs before this, I went to trucking school and got my CDL, I was there for my family, and I did the best I could with what little I had. I know that I can get a job again and continue to do positive things in the community, and I will make sure I don't end up here again.

My brother's death earlier this year made me understand that life is short. I got to just do right and follow the law and the rules to stay on track. Losing my brother made me real depressed but it also motivated me a lot. I wish I was with my mom and around the rest of the family I got now before they go too. Now that he's gone, I want to step up to help my mom and my two nieces. One of them is three and the other is four months, and my

mom has been taking care of them since Jamaal passed. I want to be there physically and financially to support them with anything I can if they need me.

After my release, the first thing I plan on doing is go to my doctor and see exactly where I'm at with my physical health. I need to get an idea of what kind of work I'm able to do since my foot has been deteriorating while I've been here and I've been finding myself in more pain than I usually am. I don't know if I'll be able to go back to driving trucks or if I should go to a different field of work, but I want to renew my CDL that expires in June. I plan on looking for work immediately. I want to continue driving trucks if I can, but if not, I want to go to trade school and learn how to be a mechanic. I'm familiar with cars and putting parts together, and I have also changed tires and oil. This is a job I know I'm capable of doing and I'm very interested in pursuing if I can't drive trucks anymore. I also want to be there for my 14 year old daughter, Ivyana. I want to provide for her financially and have my own place so that she can come visit. It's been hard not being able to see her and my family.

I am very sorry for my breach of the Court's trust, and I hope you can give me an opportunity to move forward.

Sincerely,
Thomas Little

# EXHIBIT B

Honorable Analisa Torres
United States District Judge
Southern District of New York

Dear Judge Torres,

My name is Josephine De Jesus and I am Thomas Little's mother. I'm a full-time minister in Maryland, and I previously worked for NYC Transit Authority for about 24 years, working as a first responder and with our union before retiring.

Thomas is a very loving, kindhearted, and intelligent person. He was an amazing chess player, has a photographic memory, and is very family oriented. He's very close with his brother, sister, and me, and is so caring. My son always wanted to make sure I was okay, and we still have a close mother-son relationship to this day. Family is everything to Thomas. He shows up and is there for us, whether it's just being present or giving emotional or financial support. He was always involved in community, even shoveling snow for our elderly neighbors after snowstorms when we lived in Teaneck, New Jersey. However, after his accident, things started spiraling for him.

Thomas is a well-intentioned young man who has been dealt unfortunate circumstances in life. He experienced a lot of trauma as a child that never got the attention it deserved. At 9 years old, Thomas had a very horrible accident with a garbage disposal that partially severed his foot. He was in surgery for over 16 hours, received over 10 surgeries afterward in attempts to save his foot, and was hospitalized for about 6 months while getting the surgeries, recovering, and getting rehabilitation services. It was very a very intense and traumatic situation for a child to go through, and the doctors said he would never be able to walk again. It took a lot of prayer and belief in God, but within a year of the accident Thomas went from using a wheelchair, to crutches, to walking on his own. It was miraculous, but the doctors told us that he would need further medical attention as he got older and that's the situation Thomas is currently facing.

While staying at MDC, Thomas' medical conditions has been rapidly declining. A couple months back, a doctor said his foot is basically decomposing, and that he still isn't enough to get proper medical attention from the facility. They have him on the 7th floor, and he's putting so much pressure on his foot to move around and do basic tasks. Not to mention that he's not receiving the medication he needs to keep his pain in control. Whenever we're on the phone he talks about the intense pain he's in and most recently said that if MDC continues to deny him medical attention, he is going to request to have his foot amputated.

On top of that, Thomas' brother Jamaal recently passed away. My son's passing had been a huge loss to all of us and since then Thomas doesn't sound like himself. He talks about how he can't even let his guard down to properly grieve his brother and he chokes up while he's saying that.

He said to me that it's very horrible where he is and he can't show any weakness or emotion. It gave me the impression that he's walking on eggshells and needs to portray a certain image to not get preyed on. My family's been fragmented. Jamaal is gone and Thomas has been pulled away, and it feels like we're falling apart. The loss has had a great impact on Thomas even in terms of how he's speaking now. He is speaking and thinking differently, saying things like "I have to get myself together, this isn't how I should be moving forward." I even heard him having a conversation with my niece saying, "I have to get my life together." This devastating loss is one that had Thomas immediately reassessing life, the choices he is making, what's important to him, and how to move forward.

When he was previously released, we saw how difficult it was for him to navigate his emotions and get the help he needed. I believe he faced depression and anxiety from being thrown into a society that changed drastically, and he was left to sink or swim alone. I want him to have options and productive ways of dealing with hardships of going through the world when you're out of the system. I can help him navigate his emotions to keep him from giving into impulsivity. I also plan on connecting him with organizations that will help him build community, including our church in New York that watched him grow up, and will work on finding him mental health help.

We have spoken a lot about his plans for the future if he stays in New York, and his main focus will be getting into some kind of program that will not only help him to find an apartment and get settled but get involved in building his own support network and community. My son is also welcome to stay with me in Maryland whenever he wants. If his medical condition allows, Thomas plans on going back to working for a trucking company. Prior to this recent arrest, Thomas was working construction in Arizona and eventually got his CDL against all odds. He was proud of the fact that he was working and able to make big steps forward after getting released, and he's even more motivated now. He found out he has a daughter a couple years ago, and she gave him a whole different sense of purpose. He turned his life around for her. They adore each other and talk on the regular, and it's been hard for her to not see him after just finding her dad. I know that Thomas will continue to be productive and make better decisions for the sake of his daughter and to make Jamaal proud.

I believe losing Jamaal was a wake up call to all of us, but especially Thomas, that time is not promised to anyone. In his own words, he's getting too old to be doing the same foolishness and he understands the gravity of the situation he's in. Your Honor, I only as for grace. This year came in like a bulldozer and completely destroyed us. Considering everything that this family has gone through this year, I just ask for grace and for you to give my son a chance at honoring his brother by making amends and moving forward. Thank you.

Sincerely,
Josephine De Jesus